IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GARRET SEKIGAWA,<br><br>                Plaintiff,<br><br>   vs.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>                Defendant. | Civ. No. 19-00204 JMS-RT<br><br>ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING ACTION FOR FURTHER PROCEEDINGS |

**ORDER REVERSING DECISION OF COMMISSIONER OF SOCIAL SECURITY AND REMANDING ACTION FOR FURTHER PROCEEDINGS**

**I. INTRODUCTION**

Plaintiff Garret Sekigawa ("Plaintiff" or "Sekigawa") petitions for review under 42 U.S.C. § 405(g) of Commissioner of Social Security Andrew Saul's ("the Commissioner's") denial of Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. After careful review, the court REVERSES the denial and REMANDS for further proceedings.

The Administrative Law Judge's ("ALJ's") formulation of Plaintiff's Residual Functional Capacity ("RFC") in his February 6, 2018 decision was faulty. The ALJ erred in rejecting medical opinions of Dr. Michael Dimitrion (Plaintiff's

long-time treating physician) without considering all the factors required in 20 U.S.C. § 404.1527(c)(2). *See, e.g.*, *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("Treating source medical opinions . . . must be weighed using all of the factors provided in 20 C.F.R. 404.1527") (quoting Soc. Sec. Reg. 96-2p at 4 (1996)). Among Dr. Dimitrion's other opinions, the ALJ gave no deference to an August 1, 2017 letter of Dr. Dimitrion because the ALJ did not consider it to be a "medical opinion" since it opined on the ultimate question of whether Plaintiff is "disabled"—normally a question reserved to the Commissioner. The letter, however, contains medical opinions and cannot be ignored just because it *also* expresses an opinion on the ultimate question of disability. *See, e.g.*, *Boardman v. Astrue*, 286 F. App'x 397, 399 (9th Cir. 2008).

The ALJ also improperly used, without further inquiry, Plaintiff's failure to undergo recommended surgery as a basis to conclude that Plaintiff's symptoms and limitations are not as severe as alleged. The record, however, contains references to the reason Plaintiff failed to seek such treatment—a lack of medical insurance to pay for the surgery, which cannot be a basis for a denial. *See, e.g.*, *Orn*, 495 F.3d at 638 ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)).

And the ALJ's analysis was incomplete when, in evaluating Plaintiff's symptoms, the ALJ found—by focusing only on certain answers to written questionnaires, but without discussing other contrary evidence—that Plaintiff's activities of daily living were inconsistent with the alleged severity of his orthopedic symptoms. *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability.") (internal editorial marks and citations omitted); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citations omitted).

## II. <u>BACKGROUND</u>

Plaintiff was born in 1956, and was 58 years old when he stopped working on December 3, 2014. *See* Administrative Record ("AR") 231, 235.[1] He worked as a dispatcher for a transportation company from 1994 until he stopped working in 2014. AR 236. He applied for social security disability benefits on March 16, 2015, alleging a disability onset date of December 3, 2014. AR 20, 235.

---

[1] The AR is numbered sequentially from pages 1 to 826, and is available at ECF Nos. 10-2 to 10-10.

Before 1994, Plaintiff worked as a delivery driver, and apparently sustained a lower back injury in 1983, and another back injury in September of 1989 during a delivery. *See, e.g.*, AR 352, 357. Thus, in addition to medical evidence regarding his claimed disability of December 3, 2014, the record contains extensive medical records regarding workers compensation claims related to those prior incidents. *See* AR 354-57, 443-512, 524-709. Although that evidence from incidents in the 1980s may be marginally relevant, the court's review focused on medical and other evidence more directly related to the 2014 *social security* disability determination, and not on workers compensation matters—although the various injuries may (or may not) be connected. For example, a 2015 report of a reviewing orthopedic surgeon agreed that "[Plaintiff] is a candidate for [fusion] surgery as he has basically failed conservative measures," but disagreed that his condition was caused by the 1989 injury, opining that "I believe that [Plaintiff] is disabled from work due to his current degenerative disc disease and degenerative joint disease with the grade I anterolisthesis at L4-5 and not due to the 09/20/89 industrial injury." AR 357-58.

After an August 11, 2017 administrative hearing, AR 57-95, the ALJ issued his February 6, 2018 decision finding Plaintiff not disabled within the meaning of the social security regulations. AR 20-31. In so doing, the ALJ

determined that Plaintiff stopped working because he had the following severe

impairments (primarily to his back):

> L4-L5 spondylolisthesis; L2 to L5 spinal stenosis;
> anterolisthesis of L4-L5; obesity; hypertension; hearing
> loss of the left ear; mild degenerative changes of the right
> knee; right shoulder glenohumeral joint arthritis; right
> shoulder adhesive capsulitis and bursitis; and chronic
> pain syndrome.

AR 22. That is, the ALJ found that Plaintiff had "an impairment sufficiently

severe to limit his . . . ability to work," *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d

1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920), so as

potentially to qualify as "disabled," depending on an assessment of his RFC to be

able to perform past work or other work available in the national economy.

> In this regard, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform a restricted range of
> sedentary work as defined in 20 CFR 404.1567(a).
> Specifically, the claimant can lift, carry, push or pull 20
> pounds occasionally and 10 pounds frequently;
> stand/walk for 2 hours out of 8 hours; sit for 6 hours out
> of 8 hours; can perform occasional postural activities; is
> limited to occasional exposure hazardous machinery and
> unprotected heights; cannot climb ladders, ropes, or
> scaffolds; is limited to moderate noise; and is limited to
> occasional above the shoulder work with the right
> dominant arm.

AR 26.  Based on that RFC, and considering the testimony of a vocational expert, the ALJ determined that Plaintiff was not disabled because he could perform his past work as a motor vehicle dispatcher.  Specifically, the ALJ found "[i]n comparing the [Plaintiff's RFC] with the physical and mental demands of this work, and based on the vocational expert's testimony, the [ALJ] finds that the [Plaintiff] is able to perform his past work as a motor vehicle dispatcher as generally performed."  AR 30.

The court's review centers around whether the ALJ properly formulated this RFC.  The relevant factors and evidence that the ALJ considered (or did not consider) are set forth and analyzed in the discussion section to follow.

After the ALJ's decision, the Appeals Council denied review on February 24, 2019.  AR 1.  Plaintiff then filed this timely action on April 22, 2019.  ECF No. 1.  Plaintiff filed his Opening Brief on September 9, 2019, ECF No. 12; Defendant filed an Answering Brief on October 16, 2019, ECF No. 13; and Plaintiff filed his Reply on November 6, 2019, ECF No. 14.  The court held a hearing on December 9, 2019.  ECF No. 16.

## III.  <u>STANDARD OF REVIEW</u>

A claimant is "disabled" for purposes of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Burch v. Barnhart*, 400 F.3d 676,

679 (9th Cir. 2005).

A district court affirms a Commissioner's decision if it is based on

proper legal standards and the findings are supported by substantial evidence on

the record as a whole. *See* 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971); *see also Tylitzki v. Shalala*, 999 F.2d 1411,

1413 (9th Cir. 1993).

## IV. DISCUSSION

### A. Disability Determinations

Under Social Security Administration regulations, a familiar five-step

sequential evaluation process applies to determine whether a person is "disabled"

under the Social Security Act:

> (1) Has the claimant been engaged in substantial gainful activity? If
> so, the claimant is not disabled. If not, proceed to step two.
>
> (2) Has the claimant's alleged impairment been sufficiently severe to
> limit his ability to work? If not, the claimant is not disabled. If so,
> proceed to step three.
>
> (3) Does the claimant's impairment, or combination of impairments,
> meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*See, e.g.*, *Stout*, 454 F.3d at 1052 (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four; the Commissioner has the burden at step five.  *See, e.g.*, *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).  At steps four and five, the ALJ may consider testimony from an impartial vocational expert to determine whether an applicant can perform his or her past work, or to determine whether he or she can perform other jobs in the national economy.  *See, e.g.*, *Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007) ("[T]he ALJ may rely on the testimony of a vocational expert in making the necessary findings at step four.") (citations omitted); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) ("The [Commissioner] can meet this burden [at step five] by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations.").

**B.** **Analysis of Sequential Evaluation Process**

The first three steps of the analysis are not at issue. At step one, Plaintiff has not been engaged in substantial gainful activity since December 3, 2014. *See* AR 22. At step two, Plaintiff has severe impairments that significantly limit his ability to work. *See* AR 22-25. And at step three, Plaintiff's impairments or combination of impairments do not meet or equal the severity of the "listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." AR 25. Instead, the dispute centers on step four, and specifically whether the ALJ properly assessed Plaintiff's RFC in determining that Plaintiff could perform past relevant work. (Because the ALJ found Plaintiff not disabled at step four, he did not reach step five.)

**1.** *Medical Opinions of Treating Physician, Dr. Dimitrion*

In formulating the RFC, the ALJ made the following findings regarding certain opinions of Dr. Dimitrion, Plaintiff's long-time treating physician:

> [Dr. Dimitrion] opined in a typewritten letter dated December 11, 2015 and August 1, 2017 that [Plaintiff] was "disabled" and "totally disabled." Although Dr. Dimitrion has had a treating relationship with the claimant, a determination as to whether the claimant is "unable to work" or is "disabled" is an opinion on an issue reserved to the Commissioner, and therefore these statements are not given special significance pursuant to 20 CFR 404.1527(d). In addition, it is unlikely that

> "disability," as used on this form, was determined
> according to the Social Security Act and regulations.
> Lastly, such statements are conclusory and provide
> inadequate explanation of the evidence relied on in
> determining that the claimant is "disabled." As explained
> above, the record indicates the claimant can perform a
> restricted range of sedentary work. As such, these
> statements are given little weight.

AR 29 (internal citation omitted).

The ALJ erred in his consideration of Dr. Dimitrion's August 1, 2017 letter, which provides in full as follows:

> I am writing on behalf of my patient, Garrett Sekigawa,
> who is caught in the complicated web of the workers'
> compensation process that prevents him from having a
> surgical fusion to reduce his debilitating and disabling
> low back condition. As I stated, without the surgery he
> will remain disabled and will remain totally disabled
> from any form of work.
>
> At that time during the end of December 2014, he was
> already suffering from . . . deteriorating and painful low
> back symptoms. He was so severely impaired by his low
> back condition alone, that it almost prevented him from
> going on a pre-planned mainland vacation to see a
> brother-in-law, who was undergoing a life threatening
> operation. Out of due respect and with extreme
> determination he went.
>
> Immediately upon his return, he called to arrange for an
> appointment with me. I stated "[u]pon his return it was
> clear to me that he remained disabled and will be for an
> indefinite period of time until he has surgery." I
> concluded that finally at that time, he was barely able to
> do anything, including walking, standing, sitting, and
> other postural positions. I followed him for his 1989

accident, and he worked in pain as a dedicated employee, who is required to provide for his family. He also feared his job security and that at such a "light duty" job, he should continue to work.

After following him as his primary care physician for more than 25 years, I can comment on concerns.

1. Mr. Sekigawa is a simple person and worked in this deteriorating, painful low back condition even when it is not in his best interest to work. He does not complain or ask questions. If posed a question, he provides a simple direct response. He takes recommendations literally without complaints or questions and follows them. He tries very hard to rest or sleep at all hours, sometimes in the day, and sometimes at night. Yes, he is depressed, at time[s] forgetful and distracted.

2. I can attest to his total disability for all work. Aside from his serious disabling low back condition, he has also been suffering a right knee condition for an extended period of time and for which he was scheduled for surgery by Terry Vernoy, M.D., an orthopedic surgeon, simultaneously with his low back condition. He also has a very bad right shoulder condition, which also requires surgery. He has gone without the surgeries since he does not have adequate private health insurance, [and] could not pay his nominal share. Both of these medical conditions are also longstanding. If the low back condition alone is not disabling for all work, then the combination of all conditions, including his depression, mindset, and distraction should amply support his disability for all work.

AR 815.

The Commissioner argues that Dr. Dimitrion's "opinion[] did not merit any deference because he simply opined on an issue reserved to the Commissioner." ECF No. 13 at PageID #934. The Commissioner maintains that "Dr. Dimitrion's statements on issues reserved to the Commissioner do not count as a treating source opinion[] under the agency's regulations," *id.* (citing 20 C.F.R. §§ 404.1527(d)(1), (3)), and that therefore "Plaintiff has not identified any medical source opinions supporting limitations or restrictions beyond the ALJ's RFC finding," *id.* at PageID #935. Instead, the Commissioner points to the ALJ's reliance on state-agency physicians Drs. N. Shibuya and S. Lau, both of whom reviewed Plaintiff's records and assessed Plaintiff's RFC by opining that Plaintiff could (1) stand and walk six hours per day; (2) sit six hours per day; (3) lift and carry up to 20 pounds occasionally, and up to 10 pounds frequently; (4) occasionally climb ramps, stairs, ladders, ropes, and scaffolds; (5) occasionally stoop, kneel, crouch, and crawl; but (6) should avoid concentrated exposure to loud noise and wear protective hearing devices (because of hearing loss in his left ear). *See* AR at 100-02; 111-13.

But Dr. Dimitrion's August 1, 2017 letter clearly contains "medical opinions" for purposes of the social security regulations. The regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your

12

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 1527(a)(1). Among other matters, the letter discussed "deteriorating and painful low back symptoms;" a need for "surgical fusion;" Plaintiff's condition being such that at one time "he was barely able to do anything, including walking, standing, sitting, and other postural positions;" that he "is depressed, at time[s] forgetful and distracted;" that "he has also been suffering a right knee condition for an extended period of time and for which he was scheduled for surgery;" that he "has a very bad right shoulder condition, which also requires surgery;" and that "these medical conditions are also longstanding." AR 815. Under the regulatory definition, the August 1, 2017 letter plainly contains "medical opinions."[2]

Although it is true that whether a claimant is "disabled" is an issue reserved for the Commissioner, *see* 20 C.F.R. § 404.1527(d)(1), merely because the August 1, 2017 letter *also* contains an opinion on that ultimate issue does not mean an ALJ can disregard the medical opinions that *are* included in the letter. *See, e.g.*, *Boardman*, 286 F. App'x at 399 ("Rather than afford weight to these

---

[2] In contrast, the record also includes several "disability certificate" forms stating simply that Plaintiff "[h]as been under my professional care and was totally/partially incapacitated from" certain dates. *See, e.g.*, AR 428. These certificates are not "medical opinions" under the regulations. On remand, however, the ALJ should also carefully examine other documents that might also contain medical opinions. *See, e.g.*, AR 419-20 (March 18, 2015 handwritten letter from Dr. Dimitrion for workers compensation purposes).

medical opinions, the ALJ ignored them on the ground that Dr. Davis also expressed an opinion regarding Boardman's ultimate disability and residual functional capacity. While this may be a specific reason to reject a treating physician's medical opinion, it is not a legitimate one."); *Gottuso v. Colvin*, 2014 WL 1286221, at *9 (C.D. Cal. Mar. 28, 2014) ("The ALJ's second reason for affording 'little weight' to the opinion of Dr. Siskind—*to wit*, that '[t]he determination of disability is an issue reserved to the Commissioner'—is misguided."); *id.* ("Rather than affording weight to Dr. Siskind's opinion regarding plaintiff's 'permanent unsteadiness' and continuing episodes of vertigo, the ALJ appears to have [improperly] rejected it outright on the ground that Dr. Siskind rendered an opinion regarding ultimate disability.").

The ALJ thus erred in not giving the letter proper consideration. "Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citations omitted).[3] "If a treating

---

[3] This rule, based on 20 C.F.R. § 1527, for evaluating opinion evidence is effective for claims filed—such as this one—before March 27, 2017. On January 18, 2017, the Social Security Agency published final rules that changed how medical evidence is evaluated. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). Under the revised rules, set forth in 20 C.F.R. § 404.1520c, the agency "will not defer or give any specific evidentiary weight, including controlling weight to any medical opinion(s) or prior administrative medical finding(s)," but instead will consider

(continued . . . )

physician's opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record, [it will be given] controlling weight." *Id.* (quoting

*Orn*, 495 F.3d at 631 (alterations in original)).

However, "[e]ven if a treating physician's opinion is contradicted, the

ALJ may not simply disregard it. The ALJ is required to consider the factors set

out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford

the treating physician's medical opinion." *Id.* at 1161 (citing *Orn*, 495 F.3d at 631)

(other citation omitted). The factors include "the length of the treating

relationship, the frequency of examination, the nature and extent of the treatment

relationship, or the supportability of the medical opinion." *Trevizo v. Berryhill*,

871 F.3d 664, 676 (9th Cir. 2017). They also include, for example,

> the amount of relevant evidence that supports the opinion
> and the quality of the explanation provided; the
> consistency of the medical opinion with the record as a
> whole; the specialty of the physician providing the
> opinion; and "[o]ther factors" such as the degree of
> understanding a physician has of the Administration's
> "disability programs and their evidentiary requirements"

(. . . continued)
"supportability" and "consistency" of medical opinions in evaluating their "persuasiveness." 20
C.F.R. § 404.1520c(a). The new rule applies only to claims filed on or after March 27, 2017,
and the court thus applies the prior rule. *See, e.g.*, *Despain v. Berryhill*, 926 F.3d 1024, 1027 n.3
(8th Cir. 2019) ("Because the ALJ order in Despain's case predates the new rules [regarding
treating physicians], we do not address them.").

and the degree of his or her familiarity with other
information in the case record.

*Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(3)-(6)).

In short, the ALJ failed to consider or at least articulate the

§ 404.1527(c) factors. "This failure alone constitutes reversible legal error."

*Trevizo*, 871 F.3d at 676.

### 2. *Consideration of Plaintiff's Failure to Undergo Surgery*

In assessing Plaintiff's RFC, the ALJ concluded that "claimant's

statements concerning the intensity, persistence and limiting effects of [his]

symptoms are not entirely consistent with the medical evidence and other evidence

in the record," AR 26, reasoning in part that he has had "relatively stable

symptoms during the relevant period," and that "his symptoms have been relatively

controlled mostly with medications and outpatient visits," AR 27. In making that

assessment, the ALJ reasoned in part that Plaintiff failed to undergo recommended

surgery to support the conclusion that conservative measures were controlling his

symptoms. For example, the ALJ wrote:

> Although it was noted in October 2015 that the claimant
> would be a candidate for lumbar fusion, there is no
> evidence that the claimant underwent any surgical
> procedure. Instead, aside from emergency treatment for
> back pain in February 2016, the claimant's treatment was
> limited to pain medications and outpatient visits.

AR 27 (internal citations omitted). Later, he reiterated:

the claimant's symptoms have been relatively stable and
controlled with the prescribed treatment regimen.  In
addition, the lack of more aggressive treatment during the
relevant time period, including surgery, suggests the
claimant's symptoms and limitations are not as severe as
alleged.  As such, the claimant's allegations regarding the
severity of his symptoms and limitations are greater than
expected in light of the objective evidence of record.

AR 28.

But the record contains references to the reason he did not undergo

surgery—he apparently had no insurance (either workers compensation or private

insurance).  *See, e.g.*, AR 815 ("He has gone without the surgeries since he does

not have adequate private health insurance [and] could not pay his nominal

share."); AR 431 ("Work comp injury denied care and surgical intervention"); *see

also* AR 248 (stating that "[s]avings is depleading (sic), and have no income

coming in") & AR 249 ("funds are almost depleaded (sic)").  If that were true, his

failure to undergo surgery is an invalid reason to evaluate and reject Plaintiff's

symptom testimony.  *See, e.g.*, *Orn*, 495 F.3d at 638 ("Disability benefits may not

be denied because of the claimant's failure to obtain treatment he cannot obtain for

lack of funds.") (quoting *Gamble*, 68 F.3d at 321); *Trevizo*, 871 F.3d at 681

(same).  And, likewise, this reason cannot support an adverse credibility

determination.  *See Franz v. Colvin*, 91 F. Supp. 3d 1200, 1208 (D. Or. 2015)

(concluding that although "'unexplained, or inadequately explained, failure to seek

treatment' may be the basis for an adverse credibility finding . . . lack of medical treatment due to an inability to afford medical treatment does not support an adverse credibility determination.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) and citing *Orn*, 495 F.3d at 638).[4]

To summarize, the ALJ erred in relying, without further inquiry, on Plaintiff's failure to undergo recommended surgery to conclude that Plaintiff's symptoms were not as severe as alleged when formulating Plaintiff's RFC.

### 3.     *Consideration of Plaintiff's Activities of Daily Living*

The ALJ also rejected Plaintiff's symptom testimony because "his activities of daily living . . . are not consistent with the alleged severity of his orthopedic symptoms."  AR 27.  Specifically, the ALJ reasoned as follows:

---

[4] At minimum, the ALJ erred in drawing an adverse inference about Plaintiff's failure to undergo surgery without considering any explanations for such failure or without exploring possible reasons.  *See, e.g.*, *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("[T]he ALJ may not draw any inferences 'about a claimant's condition from this failure [to seek surgery] unless the ALJ has explored the claimant's explanations as to the lack of [such] medical care.'") (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)); *see also Golphin v. Astrue*, 2010 WL 114488, at *6 (C.D. Cal. Jan. 5, 2010) ("Although the failure to . . . follow a prescribed course of treatment may serve as an appropriate basis for making a credibility determination, plaintiff was not asked why he did not seek treatment . . . .  Nor was plaintiff asked to explain why he did not avail himself of such treatments.") (internal citation omitted) (citing Social Security Ruling 96-7P (providing that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide")). These are areas the ALJ may develop on remand in determining whether, in fact, Plaintiff did not undergo recommended surgeries for lack of insurance, or whether he had other reasons to forego surgery.

> Moreover, some of the claimant's statements regarding
> the limiting effects of his physical impairments are not
> fully consistent with his activities of daily living and his
> presentation. Despite reporting problems with his back,
> right shoulder, and right knee, the claimant can prepare
> simple meals, shop, drive, and feed/water his pet. He can
> also wash the dishes and do the laundry once or twice a
> week. Therefore, his activities of daily living and his
> presentation are not consistent with the alleged severity
> of his orthopedic symptoms.

*Id.* (internal citations omitted). This analysis is flawed.

Initially, as support for his findings, the ALJ cited to answers Plaintiff filled out in an April 21, 2015 Function Report. *See* AR 245-60. But the ALJ cited only the portions that support the ALJ's conclusion while ignoring the portions that explain the answers.

For example, when the Function Report asked: "Do you prepare your own meals?" Plaintiff wrote: "microwave pre heat meals some time (sic) Does not apply." AR 247. The next questions asked: "How often do you prepare food or meals?" and Plaintiff answered: "I Don't. Someone prepare (sic) meals for me. Does not apply." *Id.* The next question continued "How long does it take you?" and Plaintiff answered "Couple minutes to microwave to heat. Does not apply." *Id.* And the next question asked "Any changes in cooking habits since the illness, injuries, or conditions began?" and Plaintiff answered "I don't cook. Does not

apply." *Id.* From these answers, the ALJ concluded that Plaintiff "can prepare simple meals." AR 27.

Similarly, the Function Report asked "When going out, how do you travel? (Check all that apply)." Plaintiff checked the boxes "Drive a car" and "Ride in a car." AR 248. But Plaintiff also indicated that he goes outside for "Dr. appointments and when back permits," and goes shopping for "medication [and necessity's (sic) . . . when back permits, half hr to 45 min to get to store and back." *Id.* From these answers, the ALJ concluded that Plaintiff "can . . . shop [and] drive." AR 27.

Likewise, the ALJ concluded that Plaintiff "can also wash the dishes and do the laundry once or twice a week," *id.*, based on Plaintiff's answer on a Function Report that stated: "Try to help with laundry and dishes if back pain permits to do it," AR 247, and "Wash the dishes and laundry when back permits," AR 277.

And in making findings based on Plaintiff's activities of daily living, the ALJ apparently rejected Plaintiff's other statements in the same Function Report that, for example, Plaintiff (1) could not pursue other interests because he "[c]an't do these activity with back pain now," and "[c]an't do it now due to back injury pain," AR 249, or (2) handled stress or changes in routine "depend[ing] on the amount of back pain," or was "frustrat[ed] because of back pain," AR 251.

Similarly, the ALJ did not mention Plaintiff's testimony at the August 11, 2017

hearing regarding his activities of daily living. *See, e.g.*, AR 77 (Question: "[D]o

you walk down [to go shopping at Food Lion]?" and answer: "No, I go on a good

day. Then I take my pain killer, and wait, and when I feel better, then I go down to

do my shopping."); *id.* (Question: "Now, you also mentioned in your statement you

can walk as much as 10 minutes, but then there's another statement that indicated

that you put down you can walk 100 yards?" and answer "That's after I take my

pain killers though.").

   In so doing, the ALJ failed to engage in the required analysis in a

manner that prevents this court from performing a meaningful review. Under the

proper analysis for analyzing pain and symptom evidence,

> The ALJ must make two findings before the ALJ can
> find a claimant's pain or symptom testimony not
> credible. First, the ALJ must determine whether the
> claimant has presented objective medical evidence of an
> underlying impairment which could reasonably be
> expected to produce the pain or other symptoms alleged.
> Second, if the claimant has produced that evidence, and
> the ALJ has not determined that the claimant is
> malingering, the ALJ must provide specific, clear and
> convincing reasons for rejecting the claimant's testimony
> regarding the severity of the claimant's symptoms.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)

(internal quotation marks and citations omitted). "This is not an easy requirement

to meet: The clear and convincing standard is the most demanding required in

Social Security cases." *Trevizo*, 871 F.3d at 678 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)). "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter*, 806 F.3d at 489. "[T]he ALJ must *identify* what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (emphasis added)).

Applying those standards, the ALJ's analysis failed "to specify which testimony [he found] not credible," *id.* at 489, much less to provide "specific, clear and convincing reasons" supporting his rejection of Plaintiff's symptom evidence. *Treichler*, 775 F.3d at 1102.[5] *See also, e.g.*, *Burch*, 400 F.3d at 680 ("The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints—'general findings are insufficient.'") (quoting *Reddick*, 157 F.3d at 722) (square brackets omitted)). Because the ALJ

_____

[5] *Treichler's* other requirements were met—the ALJ determined that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," AR 26, and the ALJ made no finding that Plaintiff was malingering, *see Treichler*, 775 F.3d at 1102. The remaining question is whether the ALJ provided "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms.

did not identify and discuss contrary evidence, the court cannot "conclude [that] the adjudicator rejected the [Plaintiff's] testimony on permissible grounds and did not arbitrarily discredit" Plaintiff's testimony. *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). *See also Revels*, 874 F.3d at 667-68 (concluding that "the ALJ failed to meet the high bar for rejecting a claimant's symptom testimony," where the ALJ found a "wide disparity" between the claimant's "symptom testimony and her reports of her daily activities" in a function report but where the ALJ "failed to acknowledge that, over and over in the same report, [claimant] explained that she could complete only some of the tasks in a single day and regularly need to take breaks—which was consistent with her symptom testimony").[6]

---

[6] Moreover, even accepting that—as the ALJ reasoned—Plaintiff can "prepare simple meals, shop, drive, and feed/water his pet [and] wash the dishes and do the laundry once or twice a week," AR 27 (citation omitted), it is far from clear that these daily activities are grounds for disbelieving Plaintiff's symptom testimony. *See, e.g.*, *Revels*, 874 F.3d at 667 ("Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from [his] credibility as to [his] overall disability. A claimant does not need to be utterly incapacitated in order to be disabled.") (internal editorial marks and citations omitted).

The Ninth Circuit has explained that "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603. But "[t]he ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch*, 400 F.3d at 681). At minimum, the ALJ gave no indication that these activities of daily living are "transferable work skills" for Plaintiff's situation.

## C.     Harmless Error

Having found errors in the ALJ's decision, the court next addresses whether those errors were harmless.  *See, e.g.*, *Burch*, 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors that are harmless.") (citation omitted). "Although [the Ninth Circuit has] expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, [it has] adhered to the general principle that an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation marks and citation omitted).  In making this assessment, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.*

The errors here, however, were not "inconsequential to the ultimate nondisability determination," that is, they could certainly have "alter[ed] the outcome of the case." *Id.*  The errors affected the determination of Plaintiff's RFC, and the court's ability to perform a proper review.  Such errors are not harmless. *See, e.g.*, *Trevizo*, 871 F.3d at 676 (concluding that an ALJ's rejection of treating physician's medical opinion without evaluating the factors in § 404.1527(c)(2) "alone constitutes reversible legal error"); *Stout*, 454 F.3d at 1056 ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can

confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

## V. <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the ALJ's February 6, 2018 decision and REMANDS the action to the ALJ for further proceedings. *See, e.g.*, *Treichler*, 775 F.3d at 1099 ("[W]hen 'the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *Brown-Hunter*, 806 F.3d at 495 ("A remand for an immediate award of benefits is appropriate . . . only in 'rare circumstances'") (quoting *Treichler*, 775 F.3d at 1099). The Clerk of Court shall close the case file.

IT IS SO ORDERED.
DATED: Honolulu, Hawaii, March 2, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Sekigawa v. Saul*, Civ. No. 19-00204 JMS-RT, Order Reversing Decision of Commissioner of Social Security and Remanding Action for Further Proceedings